UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID MONTALVO, III,<br><br>                                Petitioner,<br><br>v.<br><br>THE HONORABLE RICHARD V. SPENCER, Secretary of the Navy,<br><br>                                Respondent. | Case No.: 18-cv-1336 GPC BLM<br><br>**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**<br><br>**[ECF No. 1]** |

      Petitioner David Montalvo, III, ("Petitioner") is currently in the custody of the United States Department of Navy. ECF No. 1 ¶ 5. On June 20, 2018, Petitioner filed a petition for writ of habeas corpus. *Id.* He seeks to "reverse, overturn, and vacate" his general court-martial conviction of two specifications of rape and its accompanying nine years of confinement and dishonorable discharge. *Id.* at 1; ¶ 6. On August 9, 2018, Respondent, the Honorable Richard V. Spencer, Secretary of the Navy ("Respondent"), filed a response. ECF No. 7. On September 6, 2018, Petitioner filed a reply. ECF No. 8. The Court decides the matter on the papers submitted and without oral argument pursuant to Civil Local Rule 7.1(d)(1). For the reasons set forth below, the Court **DENIES** the Petition for writ of habeas corpus.

\ \ \

## I. Factual Background

Petitioner was a Lance Corporal in the United States Marine Corps, stationed at Camp Pendleton. ECF No. 1 ¶¶ 5, 8. On October 4, 2012, at around 10:00 p.m., VAM visited the barracks at Camp Pendleton with her coworker, where she was introduced to her coworker's boyfriend, a Marine, and his friend, Petitioner. *Id.* ¶¶ 8, 9. They socialized in Petitioner's room for a short time until VAM and her coworker left the barracks. *Id.* ¶ 9. VAM told investigators she and her coworker did not meet up with another man after leaving the barracks that night. *Id.* ¶ 18. VAM's coworker told investigators that she and VAM met up with an unidentified man from a dating website. *Id.* ¶ 17.

At 2:30 a.m., VAM's coworker received a text message from her boyfriend inviting her to spend the night, and VAM decided to accompany her coworker back to the barracks. *Id.* ¶ 10. VAM and her coworker again went to Petitioner's room. In the time between when VAM and her coworker left the barracks and later returned, Petitioner had been consuming alcohol. *Id.* ¶ 11. When VAM and her coworker returned, Petitioner was so intoxicated he could not stand without assistance or walk without staggering. *Id.* VAM's coworker soon left the room. *Id.* VAM testified that around 3:00 a.m., she called Petitioner's phone to help him find it, at which point Petitioner moved behind her and made nonconsensual sexual advances towards her. *Id.* ¶ 12. VAM testified that Petitioner then raped her continuously for three hours. *Id.* Petitioner maintains that whatever sexual activity occurred that night was consensual. *Id.* VAM left Petitioner's room at around 6:30 a.m. the following morning. *Id.* ¶ 13. At 1:00 p.m., VAM reported to work with her coworker. *Id.* ¶ 14. VAM discussed the matter with her coworkers, and then reported that Petitioner raped her. *Id.* ¶ 14.

## II. Procedural Background

### A. Petitioner's Court-Martial

Petitioner was charged with two specifications of rape in violation of Article 120 of the Uniform Code of Military Justice ("UCMJ"). ECF No. 1 ¶ 5. On June 18, 2014,

2

Petitioner was convicted by a general court-martial[1] and sentenced to reduction in rate to E-1, a dishonorable discharge, and nine years confinement in the Naval Consolidated Brig at Marine Corps Air Station Miramar. (*Id.* ¶ 6.)

During the investigative and pretrial phase of the case, the Government failed to turn over to Petitioner a copy of the forensic examination of VAM's cell phone. *Id.* ¶ 21. On December 18, 2013, Petitioner realized this error and re-requested the investigative report containing the results of the search of the cell phone, which the Government immediately provided. *Id.*; *United States v. Montalvo*, No. 201400241, 2015 CCA LEXIS 218, at *6 (N-M Ct. Crim. App. May 27, 2015) ("1st NMCCA Op."). The newly disclosed information indicated that evidence may have been deleted from VAM's cell phone. 1st NMCCA Op. at *6. Petitioner then immediately requested that the Government subpoena VAM's "phone records and text message records," and the Government served the subpoena on AT&T the next day. *Id.* On January 22, 2014, because AT&T had yet to comply with the subpoena and trial was set to begin on January 27, 2014, Petitioner filed motion to continue. *Id.* at *7. On January 23, 2014, the Government provided a copy of VAM's cell phone bill, which revealed that VAM exchanged 86 text messages with an unknown phone number containing a 404 area code on the night of the alleged rape, and when taken with previous discovery showed that the messages had been deleted. *Id.*

On January 24, 2014, the military judge held a pre-trial hearing, at which Petitioner explained that because he had received the phone bill only hours before, he had not yet been able to ascertain the identity of the person with the 404 phone number, further justifying the need for a continuance. *Id.* at *7–8. Petitioner argued a continuance of the trial was necessary to "run down" leads relating to the 404 phone number that could

---

[1] Petitioner was tried before a "panel of members," the functional equivalent of a jury. ECF No. 1 ¶¶ 56, 66, 78, 79, 89. *See* Rules for Court-Martial (R.C.M.) 501 (describing the general composition and personnel of courts-martial) and 502(a)(2) (providing that members shall determine whether the accused is proved guilty and adjudge a proper sentence).

reveal evidence going towards VAM's credibility. *Id.* at *8–9. The military judge denied the request for a continuance, finding that "there's already sufficient basis in the record for many levels of impeachment of the victim" and that "the fact that [VAM] was texting someone . . . does not persuade me that she's trying to cover something up." *United States v. Montalvo*, No. 201400241, 2016 CCA LEXIS 718, at *4 (N-M Ct. Crim. App. Dec. 15, 2016) ("2d NMCCA Op."); 1st NMCCA Op. at *9. Before trial, Petitioner was ultimately able to identify the 404 phone number as belonging to Dammeian Nelson, but was not able to communicate with him. 2d NMCCA Op. at *4–5. Petitioner was then convicted and sentenced. ECF No. 1 ¶ 33.

### B. Petitioner's Appeal

Petitioner appealed his court-martial conviction to the Navy-Marine Corps Court of Criminal Appeals ("NMCCA"). *Id.* ¶ 34. The NMCCA initially set aside Petitioner's conviction and sentence, but later affirmed the conviction upon reconsideration. 2d NMCCA Op. at *16. On appeal, Petitioner claimed that the military judge's denial of his request for a continuance violated his Sixth Amendment right to prepare for trial and present a complete defense.[2] *Id.*; 1st NMCCA Op. at *1–2 n.1.

On May 27, 2015, the NMCCA initially agreed with Petitioner, and set aside his conviction and remanded the case for rehearing. 1st NMCCA Op. at 16. On June 26, 2016, the Government filed a motion for *en banc* reconsideration of the NMCCA's May 27, 2020 decision. On July 10, 2015, the NMCCA granted Panel reconsideration and ordered remand for an evidentiary hearing under *United States v. Dubay*, 17 U.S.C.M.A. 147 (C.M.A. 1967) to investigate the content and availability of evidence regarding the text messages the victim exchanged with the 404 number. ECF No. 7-1, at 4–5 (Ex. A). On October 6, 2015, at the initial *DuBay* hearing, the Government provided a report of

---

[2] Petitioner raised several other issues on appeal to the NMCCA that are not at issue in this Petition. *See* 2d NMCCA Op. at *1 n.2, *2 n.4.

VAM's cell phone usage during the relevant time period. ECF No. 7-1, at 7 (Ex. B). Petitioner then filed a supplemental brief with the NMCCA, arguing that the cell phone usage report showed that VAM was actively using her phone during the time of the alleged rape, which the Government contested. ECF No. 7-1, at 7–8 (Ex. B).

On February 3, 2016, the NMCCA ordered the record be returned for a second *DuBay* hearing for further findings relating to what information the cell phone usage report showed, including whether VAM was actively using her phone during the time of the alleged rape. ECF No. 7-1, at 8 (Ex. B). Ultimately, on December 15, 2016, the NMCCA considered the findings of the two *DuBay* hearings and concluded that the military judge's denial of a continuance did not materially prejudice Petitioner because "the matters that might have been discovered with the addition of time would have been cumulative and of no more use than what was already available to [Petitioner] at trial." 2d NMCCA Op. at *10. Accordingly, the NMCCA affirmed the findings and sentence of the general court-martial. *Id.* at *16.

### C. Petitioner's Federal Habeas Corpus Petition

Petitioner then filed a petition for review of the NMCCA decision with the United States Courts of Appeals for the Armed Forces, which declined to review Petitioner's case on May 8, 2017. ECF No. 1 at 67. On June 20, 2018, Petitioner filed the instant federal Petition with the Court pursuant to 28 U.S.C. §§ 2241. ECF No. 1.

### III. Legal Standard

Federal district courts have jurisdiction to review habeas corpus petitions challenging military convictions pursuant to 28 U.S.C. § 2241. *See Burns v. Wilson*, 346 U.S. 137, 139 (1953). While determinations made in military proceedings are final and binding on all courts, 10 U.S.C. § 876, the federal civil courts' jurisdiction over a petition for habeas corpus from a military prisoner is not displaced. *Schlesinger v. Councilman*, 420 U.S. 738, 744–45 (1975).

The federal district courts have limited authority to review court-martial proceedings for error. *See Burns*, 346 U.S. at 139 (noting that "in military habeas corpus

the inquiry, the scope of matters open for review, has always been more narrow than in civil cases"). The Court's review is initially limited to determining whether the military courts gave the issues raised by the petitioner "full and fair consideration." *Broussard v. Patton*, 466 F.2d 816, 818 (9th Cir. 1972) (citing *Burns*, 346 U.S. at 142). If the military courts fully and fairly considered the issues asserted in the federal habeas petition, "it is not open to a federal civil court to grant the writ simply to re-evaluate the evidence" and conduct *de novo* review of the petitioner's claims. *Burns*, 346 U.S. at 142; *see also Sunday v. Madigan*, 301 F.2d 871, 873 (9th Cir. 1962).

A determination of whether this full and fair standard has been met includes an inquiry as to whether the military courts have "heard petitioners out on every significant allegation," "scrutinized the trial records," and "accord[ed petitioners] a complete opportunity to establish the authenticity of their" claims. *Burns*, 346 U.S. at 144. Applying the *Burns* standard, the Ninth Circuit has denied habeas relief to petitioners upon finding that military appellate courts "thoroughly considered the relevant law and facts." *Broussard*, 466 F.2d at 819; *see also Mitchell v. Swope*, 224 F.2d 365, 366–67 (9th Cir. 1955) (finding petitioner's due process and right to counsel claims had been "fully and carefully examined by the Board of Review" and affirming denial of petition); *Gibbs v. Thomas*, 466 Fed. App'x 646 (9th Cir. 2012) (finding military appellate courts fully and fairly considered petitioner's claims and affirming district court's denial of habeas relief).

**IV.   Discussion**

Petitioner has raised two issues in his Petition. First, Petitioner asserts a violation of his Sixth Amendment right to counsel on the basis that the military judge's rejection of his request for a continuance denied him a meaningful opportunity to present a complete defense. Second, Petitioner asserts that the NMCCA violated Petitioner's due process rights in reversing its first decision to set aside Petitioner's convictions and sentence. The Court addresses each of these claims in turn.

\ \ \

### A. The Military Judge's Denial of Petitioner's Request for a Continuance

Petitioner first claims that the military judge abused his discretion by rejecting Petitioner's request for a trial continuance, which denied Petitioner the opportunity to present evidence impeaching the credibility of VAM in violation of his Sixth Amendment right to prepare for trial and present a complete defense.[3] ECF No. 1 ¶¶ 56–74. "Whether rooted directly in the Due Process Clause . . . or in the Compulsory Process or Confrontation clauses of the Sixth Amendment," criminal defendants must have "a meaningful opportunity to present a complete defense." *Crane v. Kentucky*, 476 U.S. 683, 690 (1986).  The denial of a request for a continuance can rise to the level of a constitutional violation when it deprives the defendant of the opportunity to prepare for trial, but "only an unreasoning and arbitrary insistence upon expeditiousness in the face of a justifiable request for delay violates the right to the assistance of counsel." *Morris v. Slappy*, 461 U.S. 1, 11–12 (1983) (quoting *Ungar v. Sarafite*, 376 U.S. 575, 589 (1964)).

Petitioner argues that because the military judge denied his request for a continuance, Petitioner had no opportunity to further investigate discrepancies relating to VAM's phone records given the lack of time between the disclosure of the phone records and the trial and AT&T's failure to comply with the subpoena before trial.  ECF No. 1 ¶ 63.  Petitioner argues that having more time to investigate the then-unknown 404 phone number, later identified to belong to Mr. Nelson, whom VAM met through an online dating website, could have permitted Petitioner to obtain the actual text messages exchanged or call Mr. Nelson as a defense witness.  ECF No. 1 ¶ 68.  According to Petitioner, the phone records or Mr. Nelson's testimony would have contradicted statements made by VAM and shown that VAM may have destroyed evidence by

---

[3] The Petition also references the requirement under the Due Process Clause of the Fifth Amendment that the prosecution disclose potentially exculpatory or mitigating evidence. ECF No. 1 ¶ 59 (quoting *Brady v. Maryland*, 373 U.S. 83, 87 (1963)). However, Petitioner does not appear to raise an alleged *Brady* violation as an independent ground for reversing his conviction and sentence. In any case, the argument would be waived because it was not raised on direct appeal and there has been no showing of cause and prejudice. *See Davis v. Marsh*, 876 F.2d 1446, 1448 (9th Cir. 1989).

deleting the text messages, which would have undermined her credibility before the panel members.  ECF No. 1 ¶ 68.  Petitioner also argues that the military judge incorrectly balanced considerations such as administrative concerns, the expense to the Government, and the availability of Government trial counsel, against Petitioner's need for the continuance.  ECF No. 1 ¶ 61.  The Government argues that Petitioner's arguments were given full and fair consideration by the NMCCA.  ECF No. 7 at 5–6.

This Court cannot grant habeas relief unless the military courts failed to "deal[] fully and fairly" with Petitioner's claim.  *Burns*, 346 U.S. at 142.  In its decision following reconsideration, the NMCCA took up the issue of "whether the military judge erred in limiting [Petitioner's] constitutional right to present a defense."  2d NMCCA Op. at *1 n.1.  The NMCCA disposed of Petitioner's constitutional argument in a footnote, citing the relevant constitutional standards and finding that "the right to effective assistance of counsel was not implicated by the military judge's ruling."  2d NMCCA Op. at *10 n.17. The NMCCA proceeded to consider if Petitioner was prejudiced by the denial of the request for a continuance, a prerequisite to relief in instances of non-constitutional error. *See Rose v. Clark*, 478 U.S. 570, 579 (1986).  The NMCCA then determined that Petitioner was not materially prejudiced.  Because the NMCCA found Petitioner was not materially prejudiced, it did not reach the abuse of discretion issue. 2d NMCCA Op. at *10.

The Court finds that the NMCCA fully and fairly considered the constitutional question of whether Petitioner's right to present a complete defense was infringed by the military judge's denial of the requested continuance.  Although the NMCCA gives only limited space in its opinion to the constitutional issue, the Court cannot conclude that NMCCA "manifestly refused to consider" Petitioner's claim when the opinion shows that it "scrutinized the trial records before rejecting petitioner['s] contentions" and took account of the relevant law.  *See Burns*, 346 U.S. at 142, 144; *see also Mitchell*, 224 F.2d at 366–67 (finding that military appellate body fully and carefully examined petitioner's claim that denial of requested continuance deprived counsel of sufficient time to prepare

for trial).  The opinion shows that the NMCCA considered Petitioner's argument that Petitioner was prevented from effectively confronting VAM on issues related to her credibility as a result of the denial of the continuance, the same argument Petitioner raises here.  2d NMCCA Op. at 8; ECF No. 1 ¶ 56.  In any event, Petitioner has not shown that the denial of the continuance violated his constitutional right to prepare for trial.  The Court cannot conclude on the record before it that the military judge displayed an "unreasoning and arbitrary insistence upon expeditiousness" such that Petitioner was deprived of the assistance of counsel. *Morris*, 461 U.S. at 11–12.

The NMCCA also gave full and fair consideration to Petitioner's claim that the denial was an abuse of discretion, the heart of Petitioner's arguments here.  In determining the threshold question of whether Petitioner was materially prejudiced by the denial of the request for a continuance, the NMCCA considered the extent to which the phone records and Mr. Nelson's testimony corroborated VAM's testimony at trial and the potential additional value Mr. Nelson's testimony could have provided to Petitioner's cross-examination of VAM.  2d NMCCA Op. at *9–10.  The fact that the NMCCA ordered two evidentiary hearings relating to the phone records further demonstrates that the NMCCA was thorough in its review of whether Petitioner was prejudiced by his inability to present the records to the panel members.  Petitioner urges the Court to review *de novo* whether the military judge abused his discretion in denying the request for a continuance.  ECF No. 1 ¶¶ 62, 69, 70, 71.  But on review of a section 2241 petition arising from military proceedings, this Court cannot "simply . . . re-evaluate the evidence" considered by the NMCCA to come to a different conclusion. *Sunday*, 301 F.3d at 873.

Because the NMCCA fully and fairly considered Petitioner's claims related to the military judge's denial of the request for continuance, the Court therefore DENIES Petitioner's first ground for habeas relief.

\ \ \

### B. The NMCCA's Reversal of its Initial Decision to Set Aside Petitioner's Conviction and Sentence

Petitioner next claims that the NMCCA erred in its second decision, after it reconsidered its initial decision to set aside Petitioner's conviction and sentence on the grounds that the military judge abused his discretion in denying the request for a continuance. Specifically, Petitioner argues the NMCCA (1) "essentially used the *DuBay* hearings as a substitute for a rehearing, which denies Petitioner due process;" (2) "contradicted itself in its recitation of a key fact from its first opinion;" (3) did "not correctly analyze[] the factual information revealed by the *DuBay* hearings;" and (4) "as a result of its incorrect analysis of the facts, . . . misapplied the law as it related to prejudice to Petitioner." ECF No. 1 ¶ 76. The Government argues that the NMCCA's decision to reconsider its initial decision was within the proper scope of its authority. ECF No. 7 at 6–7.

The Court notes at the outset that several of Petitioner's arguments essentially raise disputes about how to analyze the facts. *E.g.*, ECF No. 1 ¶ 88 (disputing NMCCA's analysis of the additional probative value of Mr. Nelson's testimony); ECF No. 8 at 15–16 (disputing NMCCA's finding that because Mr. Nelson and VAM were texting one another, it was not likely that they were physically together at the time). Under the *Burns* standard, this Court cannot independently re-evaluate the NMCCA's analysis of the facts from the trial record or the *DuBay* hearings.[4]

Petitioner asserts that both *DuBay* hearings ordered by the NMCCA violated his due process rights because instead of permitting Petitioner to present Mr. Nelson's testimony at a rehearing, the *DuBay* and appellate judges "weigh[ed] Mr. Nelson's credibility as compared to VAM's." ECF No. 1 ¶ 78. Petitioner cites no authority for the

---

[4] Petitioner also takes issue with the NCMMA's recitation of facts, such as whether the rape was alleged to have occurred at 3:00am or 3:30am. ECF No. 1 ¶ 80; ECF No. 8 at 16. However, as the Court does not have the trial record, it cannot discern whether the NCMMA misstated the record or the significance of any potential misstatement.

proposition that due process required the NMCCA to order a rehearing rather than *DuBay* hearings in order to determine what evidentiary impact the unpresented evidence would have had on the case. Article 66(d)(1) of the UCMJ affords military Courts of Criminal Appeal the ability "to weigh the evidence, judge the credibility of witnesses, and determine controverted questions of fact." 10 U.S.C. § 866(d)(1). A *DuBay* hearing is therefore appropriate to hear evidence and make findings of fact and conclusions of law related to collateral issues. *DuBay*, 37 C.M.R. at 413; *see also United States v. Campbell*, 57 M.J. 134, 138 (C.A.A.F. 2002) ("[A] Court of Criminal Appeals may conclude in some instances, such as where there is the need to discover particular facts, that a *DuBay* evidentiary hearing may be necessary.").

Contrary to Petitioner's argument, the *DuBay* hearings were not used to retry the case, but to resolve the matter of whether Petitioner was prejudiced by his inability to present the text messages or other phone records. *See* ECF No. 8 at 4; ECF No. 7-1, at 4–5 (Ex. A); 7–8 (Ex. B). As part of its review of Petitioner's claim that the military judge abused his discretion in denying the request for a continuance, the NMCCA's determination of whether Petitioner was prejudiced by the denial necessitated findings of fact on whether the phone records and witness testimony Petitioner was unable to present at trial were material. Only after finding Petitioner had been denied his right to present a defense or prejudiced by the military judge's error would the NMCCA have been required to order a rehearing or dismiss the charges. *See* R.C.M. 1203(b). Petitioner has not shown that the use of *DuBay* hearings rather than a full rehearing by panel members deprived him of due process of law.

Petitioner also takes issue with the NMCCA's reconsideration of its first opinion, resulting in a finding in its second opinion that there was no constitutional error. ECF No. 1 ¶ 76. Reconsideration is permitted under the rules of procedure governing the military appellate courts. "The [appellate] Court may, in its discretion and on its own motion, enter an order announcing its intent to reconsider its decision or order in any case not later than 30 days after service of such decision or order on [the appellant]." 32

C.F.R. § 150.19.  Petitioner has not explained how the reconsideration procedure implicates his right to due process, and the Court can find no cases that hold the reconsideration procedure unconstitutional.  *Cf. Arizona v. California*, 460 U.S. 605, 619, 103 S. Ct. 1382, 1391 (1983), *decision supplemented*, 466 U.S. 144, 104 S. Ct. 1900 (1984) (courts are not precluded from reconsidering issues previously decided in same case); Ninth Cir. Rule 27-10 (providing for reconsideration of decisions upon motion stating "with particularity the points of law or fact which . . . the Court has overlooked or misunderstood."). In granting reconsideration, the NMCCA accepted the Government's argument that the prior decision was an incorrect application of the law.  ECF No. 7-1, at 4 (Ex. A).  Petitioner does not argue that the reconsideration was untimely, or that the NMCCA's procedures otherwise deviated from the applicable rules regarding reconsideration.  Accordingly, Petitioner has not shown that the NMCCA's reconsideration of its prior decision violated his due process rights.[5]

The Court therefore finds that the conduct of the appellate proceedings did not violate Petitioner's due process rights and DENIES Petitioner's second ground for habeas relief.

## CONCLUSION

For the foregoing reasons, the Court hereby **DENIES** the petition under 28 U.S.C. § 2241 challenging Petitioner's court-martial conviction and accompanying sentence.

**IT IS SO ORDERED.**

Dated:  August 31, 2020

Hon. Gonzalo P. Curiel
United States District Judge

---

[5] Because the Court holds that the NMCCA gave full and fair consideration to Petitioner's claim that he was denied an adequate opportunity to prepare for trial, the NMCCA did not err in its second decision by placing the burden on Petitioner to show prejudice. *See Armant v. Marquez*, 772 F.2d 552, 556–57 (9th Cir. 1985) (citing *Powell v. Alabama*, 287 U.S. 45, 59, 53 S.Ct. 55, 60 (1932)).